**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Zuffa, LLC, d/b/a The Ultimate Fighting Championship (UFC), | ) ) ) | |
| Plaintiff, | ) ) | **ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS** |
| vs. | ) ) | |
| Reza T. Kamranian, Individually, and as officer, director, shareholder, and/or principal of Kamranian, Inc., d/b/a Reza's Pitch, a/k/a Reza's Pitch-Burgers & Beer, a/k/a Reza's Pitch Burgers and Beer, | ) ) ) ) ) ) ) | |
| and | ) ) | |
| Kamranian, Inc., d/b/a Reza's Pitch, a/k/a Reza's Pitch-Burgers & Beer, a/k/a Reza's Pitch Burgers and Beer, | ) ) ) ) | |
| Defendants. | ) ) | Case No. 1:11-cv-036 |

Before the court is Plaintiff's motion to dismiss defendant's counterclaim for abuse of process, which it filed on May 31, 2011. For the reasons set forth below, the motion is granted.

**I.    BACKGROUND**

Plaintiff owns the UFC #123 broadcast (hereinafter referred to as "the Broadcast"), including all undercard matches and the entire television broadcast. On November 20, 2010, plaintiff made the Broadcast available live via encrypted satellite signal for public viewing by patrons of commercial customers who had purchased a license from plaintiff or its authorized agent, Joe Hand

1

Promotions, Inc. It also streamed the Broadcast live on its and its vendors' websites at a reduced rate for private, non-commercial viewing by its individual/residential customers.

On November 20, 2010, Defendant Reza Kamranian used a computer at his restaurant to access the Broadcast online through www.firstrow.net (hereinafter referred to as "FirstRow.net"), a website that, according to plaintiff, did not have rights in or to the Broadcast. He then displayed the Broadcast on several video screens connected to the computer.

On April 18, 2011, plaintiff initiated the above entitled action. First, it asserted that defendants had knowingly and unlawfully intercepted and commercially exhibited the Broadcast without authorization in violation 47 U.S.C. § 605, *et. seq.*:

> Defendants effected unauthorized interception and receipt of Plaintiff's Broadcast by ordering programming for residential use and subsequently displaying the programming in the commercial establishment known as Reza's Pitch Burgers & Beer for commercial gain without authorization, or by such other means which are unknown to Plaintiffs and known only to Defendants.

(Docket No. 3 (Complaint at ¶ 21)). Second, it asserted that defendants had violated its copyright by exhibiting the Broadcast without obtaining the proper authority or license in violation of 17 U.S.C. § 101, *et. seq.*:

> Defendant and/or its agents, servants, workmen and employees unlawfully obtained [the Broadcast] through a website intended for private, non-commercial, viewing, enabling Defendant to illegally re-transmit the Broadcast and publicly exhibit it without paying the appropriate licensing fee to Plaintiff, or its authorized agent for commercial distribution.

(Docket No. 3 (Complaint at ¶ 32)).

On May 12, 2011, defendants filed an answer. Therein they denied any wrongdoing and further asserted that plaintiff is estopped from complaining about their use of the Broadcast because it took no preemptive action despite the fact that it knew FirstRow.net was conspicuously labeled

as a free video service and was offering the Broadcast free of charge. They further asserted that FirstRow.net's web page contained no Term of Use Icon, "where a reasonable person might be alerted to any limitations on the right of use of the free video feed." (Docket No. 12 (Answer and Counterclaim, ¶ 10)). Finally, they asserted a counterclaim for abuse of process by plaintiff, alleging that plaintiff knowingly and in bad faith stated facts in its complaint that it knew to be false: to wit, they had illegally redirected a residential license to commercial use and intercepted or decoded plaintiff's video feed.

On May 31, 2011, plaintiff filed a motion to dismiss defendants' counterclaim in its entirety. Defendants filed a response to the motion on June, 21, 2011. Plaintiffs filed a reply in support of its motion on July 5, 2011.

## II   STANDARD OF REVIEW

The standard for a district court to employ in ruling on a motion to dismiss is well-established. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004). "A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." Id. (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996)). "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" McCormack v. Citibank, N.A., 979 F.2d 643, 646 (8th Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which there is some insuperable bar to relief.'" Strand v. Diversified Collection Service, Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Frey v. Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (quoting Bramlet v. Wilson,

495 F.2d 714, 716 (8th Cir. 1974))). It is clear under the Federal Rules that it is not necessary to plead every fact with formalistic particularity. BJC Health System v. Columbia Gas. Co., 348 F.3d 685, 688 (8th Cir. 2003). "A pleading which sets forth a claim for relief . . . shall contain a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).

### III.  DISCUSSION

In the motion now before the court, plaintiff asserts that defendants' counterclaim for abuse of process is baseless and otherwise fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a). In so doing, it stresses three points. First, it did not authorize *any* websites to distribute the Broadcast for commercial use. Second, FirstRow.net was neither its vendor nor authorized agent. Third, FirstRow.net had posted the following terms of use at the time of the Broadcast, negating defendants' assertion there was nothing to alert a reasonable person of any limitations on video feeds posted on or otherwise accessible through FirstRow.net:

> FirstRow.net hereby grants you permission to use the Website, provided that...your use of the Website as permitted is solely for your personal, noncommercial use....
>
> * * *
>
> Content on the website is provided to you AS IS for your information and personal use only and may not be used, copied, reproduced, distributed, transmitted, broadcast, displayed, sold, licensed, or otherwise exploited for any other purposes whatsoever without the prior written consent of the respective owners. FirstRow.net reserves all rights not expressly granted in and to the Website and the Content. You agree to not engage in the use, copying or distribution of any of the Content other than expressly permitted herein, including any use, copying, or distribution of User Submissions of third parties obtained through the Website for any commercial purposes.

(Docket No. 18-2.). It further asserts defendants' allegations regarding abuse of process are, at best, conclusory.[1]  Finally, it denies having any ulterior motive in this case, averring that it commenced this action against the defendants with the sole purpose of obtaining compensation for use of its property and protecting its copyright.

In response, defendants assert that their compliance with any terms of use posted on FirstRow.net are irrelevant for the purposes of plaintiff's motion. In the alternative, if the court were to conclude that FirstRow.net's terms of use are relevant, they suggest that any noncompliance would be excusable because: (1) the terms of use are posted on the website under the icon "privacy policy," and (2) "a person with reasonable internet experience would reasonably conclude that a 'privacy policy' deals with the protection of personal information, not with limitations on use of website information." (Docket No. 21). They further deny any wrongdoing and reiterate the basis for their counterclaim for abuse of process.[2]

Abuse of process is the use of legal process against another primarily to accomplish a purpose for which it was not designed. Wachter v. Gratech Co., Ltd., 608 N.W.2d 279, 287 (N.D. 2000) (quoting Restatement (Second) of the Law of Torts § 682 (1976); see also Kummer v. City of Fargo,

---

[1]  Plaintiff also notes out that users logging on to FirstRow.net.'s website are now greeted with the following message:

> This domain name has been seized by ICE - Homeland Security Investigations Special Agent in Charge, New York Office, in accordance with a seizure warrant obtained by the United States Attorney's Office for the Southern District of New York and issued pursuant to 18 U.S.C. § 981 and 2323 by the United States District Court for the Southern District of New York.

Docket No. 18-1 (screen shot of www.firstrow.net)

[2]  Defendants acknowledge that they accessed the Broadcast without paying for it by going online and clicking a link on FirstRow.net's website. However, they do not equate such conduct with unlawful interception. They also appear to be taking the position that they had not "ordered" the Broadcast for residential use or otherwise acquired a residential license for commercial purposes and therefore could not have converted a residential license to commercial use as alleged in the complaint.

5

516 N.W.2d 294, 297 (N.D. 1994). Under North Dakota law, the essential elements of an abuse of process claim are: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. Wachter v. Gratech Co., Ltd., 608 N.W.2d 279, 287 (N.D. 2000) (adding that a plaintiff must still show actual damages suffered as a result of the abuse of process).

Having reviewed the pleadings, the court concludes that defendants have failed to state a cognizable counterclaim. First, it is generally accepted that the filing of a complaint is insufficient to establish the tort of abuse of process. See id. ("The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort."); see e.g., Hampton v. Nustar Management Financial Group, 2007 WL 119146 (D. Nev. Jan. 10, 2007) (opining that the complaining party must include some allegation of abusive measures taken *after* the filing of the complaint in order to state a claim for abuse of process); Direct TV, Inc. v. Zink, 286 F. Supp.2d 873, 876 (E.D. Mich. 2003) (requiring something more than the filing of a complaint to sustain an abuse of process claim); Riddell Sports Inc. v. Brooks, 872 F. Supp.2d 73, 79 (S.D.N.Y. 1995) (same); Laxalt v. McClatchy, 622 F.Supp. 737, 752 (D.Nev.1985) (same). Second, and more importantly, defendants have not alleged any abusive measures taken after the filing of the complaint that would establish a willful act of process not proper in the regular conduct of the proceeding.

Defendants' counterclaim is founded upon disputed facts in the plaintiff's complaint. The existence of disputed facts does not constitute the basis for a cognizable counterclaim for a abuse of process, however.  As the North Dakota Supreme Court explained in Wachter,

> Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

608 N.W.2d at  287 (quoting Restatement (Second) of the Law of Torts § 682 (1976), and Prosser and Keeton, The Law of Torts § 121, at p. 898 (5th ed.1984)).

## IV. CONCLUSION

Based on the foregoing, plaintiff's motion (Docket No. 17) is **GRANTED** and defendants' counterclaim is **DISMISSED**.

**IT IS SO ORDERED.**

Dated this 17th day of August, 2011.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court